STATE OF RHODE ISLAND
WASHINGTON, SC

SUPERIOR COURT

CGI-NIT, LLC

Plaintiff,

v.

NARRAGANSETT INDIAN TRIBE

Defendant.

DOCKET NO.:

SUPERIOR COURT
FILED
SEP 12 2006
WASHINGTON COUNTY
COURTLAND R. CHAPMAN JR.
CLERK

**COMPLAINT**

**INTRODUCTION**

1. This is an action to enforce a promissory note between Plaintiff CGI-NIT, LLC ("CGI-NIT") and Defendant Narragansett Indian Tribe (the "Tribe") dated April 2, 2001 in the amount of $10,000,000 (the "Note").

**PARTIES**

2. Plaintiff CGI-NIT is an Illinois limited liability company with a principal place of business at 1560 Sherman Avenue, Suite 900, Evanston, Illinois. CGI-NIT is the holder of a promissory note dated April 2, 2001 in the amount of $10,000,000 (the "Note"). (See infra ¶ 11.) A copy of the Note is attached hereto as Exhibit 1.

3. Defendant Tribe is a federally recognized Indian Tribe of the State of Rhode Island with an administrative office at 4375-B South County Trail, Charlestown, Rhode Island.

4. Under the terms of the Note, the Tribe expressly waived any applicable sovereign immunity in connection with the collection of the Note and consented to be subject to Rhode Island law and jurisdiction. (See Note at ¶¶ 2.6, 2.10.) The Tribe also waived presentment, notice of dishonor and protest of the Note. (See Note at ¶ 2.1.)

**FACTS COMMON TO ALL COUNTS**

5. In or around 1993, Capital Development Gaming Corporation ("CDGC") and the Tribe entered into a business relationship for the purpose of establishing and developing a casino/gaming facility in Rhode Island. The business relationship ended in or around 1999.

6. On or about April 2, 2001, the Tribe executed and delivered the Note to CDGC.

7. The Note arose out of a settlement between the Tribe and CDGC regarding repayment of monies CDGC and/or its parent, Capital Gaming International, Inc. ("Capital Gaming"), had spent on behalf of the Tribe during their relationship.

8. The Tribe's payment obligation under the Note begins on the sixtieth (60th) calendar day (the "Commencement Date") after the opening of any gaming, casino or similar facility, project or enterprise ("Casino Project") as to which the Tribe is directly or indirectly involved in Rhode Island. (See Note at ¶ 1.1.)

9. The Note provides that the Tribe must make payments in eighty-three (83) monthly installments of $119,000.00 followed by an eighty-fourth (84th) and final month's installment of $123,000.00. (See id.)

10. In addition, under the Note, interest on the outstanding principal balance begins to accrue on the Commencement Date. Interest accrues at a rate equal to the prime rate announced by Fleet Bank, N.A. (now Bank of America) plus one (1) percent. (See Note at ¶ 1.3.)

11. On or about July 20, 2006, CDGC assigned the Note to Capital Gaming, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for such promissory note, and any and all documents and instruments related thereto. Immediately thereafter, Capital Gaming assigned the Note and the related rights to Plaintiff CGI-NIT. There is no prohibition on assignments under the Note. Copies of the assignments are attached hereto as Exhibit 2.

12. Upon information and belief, on or about November 1, 2005, 1,750 new video lottery terminals went online at a gaming and entertainment facility located at 1600 Loisquisset Pike, Lincoln, Rhode Island (the "New VLT Gaming Enterprise").

13. Under R.I. Gen. Laws § 42-61.2-7 (Division of Revenue), the Tribe is to be paid five (5) percent of the net terminal income from the New VLT Gaming Enterprise.

14. The New VLT Gaming Enterprise constitutes a Casino Project as defined under the Note. (See Note at ¶ 1.1.)

15. The Tribe's direct or indirect involvement in the New VLT Gaming Enterprise triggers the payment provisions of the Note.

16. Under the Note, the Commencement Date on which the Tribe's payment obligation began was on or before December 31, 2005 - the sixtieth (60th) calendar day after the November 1, 2005 opening.

17. Under the Note, interest also began to accrue on or before December 31, 2005.

18. On or about July 19, 2006, the Rhode Island Department of Administration sent a letter to the Tribe stating that, based upon the Revenue Estimating Conference's final calculation of the net terminal income for Fiscal Year 2006, $392,547.00 is payable and due to the Tribe. A copy of the July 19, 2006 letter to the Tribe is attached hereto as Exhibit 3.

19. This income, and all future income the Tribe will receive from the New VLT Gaming Enterprise, is revenue "payable or due to the Tribe or any Tribal Entity and arising from or in

connection with any Casino Project" per Paragraph 1.4 of the Note.

**COUNT I**
**BREACH OF CONTRACT**

20. CGI-NIT repeats and reincorporates herein its allegations contained in Paragraphs 1 through 19 above.

21. CGI-NIT and the Tribe entered into a valid, binding, enforceable contract, namely the Note.

22. Pursuant to the plain terms of the Note, CGI-NIT is entitled to receive revenue, dividends or other payments arising from or in connection with any Casino Project with which the Tribe is directly or indirectly involved.

23. The Tribe has become directly or indirectly involved in the New VLT Gaming Enterprise.

24. Income from the New VLT Gaming Enterprise has been paid or is payable and due to the Tribe and/or a Tribal Entity.

25. To date, the Tribe has failed to make payment(s) due under the Note.

26. Paragraph 1.6 of the Note provides that an event of Default occurs "[i]f the Obligor . . . breaches its obligation to pay or provide principal, interest or any other amount payable hereunder when due . . . ."

27. As a result of the Tribe's failure to provide funds for payment under the Note, the Tribe has Defaulted on the Note.

28. Paragraph 1.6 of the Note further provides that, in the even of Default, "all principal and other amounts payable hereunder shall be accelerated and due in full immediately, without demand or notice . . . ."

29. Accordingly, CGI-NIT accelerated the indebtedness owing pursuant to Paragraph 1.6 of the Note.

30. CGI-NIT has suffered and will continue to suffer damages.

31. Under Paragraph 2.4 of the Note, CGI-NIT is entitled to payment or reimbursement of its costs and expense of enforcing the Note, including, without limitation, reasonable attorneys' fees.

## COUNT II
## BREACH OF CONTRACT

32. CGI-NIT repeats and reincorporates herein its allegations contained in Paragraphs 1 through 31 above.

33. Paragraph 2.3 of the Note provides that the Tribe shall keep the "Payee generally informed as to developments concerning any Casino Project, proposed or actual, related legislation and the role and financial prospects of Obligor [i.e. the Tribe] in connection therewith."

34. To date, the Tribe has never provided CDCG with any information concerning any Casino Project, including the New VLT

Gaming Enterprise as required by Paragraph 2.3 of the Note, since the execution of the Note.

35. As a result of the Tribe's failure to provide CDCG with any information concerning the New VLT Gaming Enterprise, the Tribe has Defaulted on the Note.

36. Paragraph 1.6 of the Note provides that an event of Default occurs "[i]f the Obligor [i.e. the Tribe] . . . breaches its obligation . . . to perform its obligations hereunder."

37. Accordingly, CGI-NIT accelerated the indebtedness owing pursuant to Paragraph 1.6 of the Note.

38. CGI-NIT has suffered and will continue to suffer damages.

39. Under Paragraph 2.4 of the Note, CGI-NIT is entitled to payment or reimbursement of its costs and expense of enforcing the Note, including, without limitation, reasonable attorneys' fees.

**COUNT III**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

40. CGI-NIT repeats and reincorporates herein its allegations contained in Paragraphs 1 through 39 above.

41. The Note imposes an implied covenant of good faith and fair dealing between the parties.

42. Moreover, Paragraph 2.3 of the Note imposes on the Tribe the requirement that it inform CDGC as to developments

concerning any Casino Project, proposed or actual, related legislation and the role and financial prospects of the Tribe in connection therewith.

43. Upon information and belief, the Tribe has known for an extended period of time of a Casino Project, as well as related legislation and the role and financial prospects of the Tribe in connection therewith.

44. Despite its obligations under Paragraph 2.3 of the Note, the Tribe has never provided any information concerning any Casino Project, related legislation or the Tribe's role and financial prospects in connection therewith.

45. In addition, Paragraph 1.1 of the Note requires that the Tribe meet certain payment obligations arising from or in connection with any Casino Project with which the Tribe is directly or indirectly involved.

46. Upon information and belief, on or about November 1, 2005, 1,750 new video lottery terminals went online at the New VLT Gaming Enterprise and the Tribe's payment obligation triggered thereafter.

47. Yet, to date, the Tribe has not made any payment(s) or offered to make any payment(s) due under the Note.

48. In failing to make any reasonable efforts to comply with the plain terms of the Note, including Paragraphs 2.3 and 1.1 for an extended period of time, the Tribe has breached the

covenant of good faith and fair dealing implied in the agreement.

49. As a result of the Tribe's breach of the implied covenant of good faith and fair dealing, CGI-NIT has suffered and will continue to suffer damages.

50. Under Paragraph 2.4 of the Note, CGI-NIT is entitled to payment or reimbursement of its costs and expense of enforcing the Note, including, without limitation, reasonable attorneys' fees.

**WHEREFORE**, CGI-NIT prays this honorable Court enter judgment in its favor on all counts of this Complaint and grant the following relief:

a. Under Count I, issue a judgment declaring that the Tribe has breached its contact with CGI-NIT by refusing to comply with its contractual payment obligation.

b. Under Count I, issue a judgment awarding CGI-NIT damages in an amount to be determined at trial, together with interest, costs and attorneys' fees.

c. Under Count II, issue a judgment declaring that the Tribe has breached its contract with CGI-NIT by failing to provide any information concerning any Casino Project and by refusing to comply with its contractual payment obligation.

d. Under Count II, issue a judgment awarding CGI-NIT damages

in an amount to be determined at trial, together with interest, costs and attorneys' fees.

e. Under Count III, issue a judgment awarding CGI-NIT damages in an amount to be determined at trial, together with interest, costs and attorneys' fees.

f. Grant such other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Brian D. Gross, RI Bar # 6891
COOLEY MANION JONES LLP
One Center Place
Providence, RI 02903
(401) 273-0800

AND

Harry L. Manion III, MA BBO # 317440
Paul F. Beckwith, MA BBO # 550186
Christopher J. Cunio, MA BBO # 634518
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100

Dated: September 12, 2006
165157v1