# Exhibit 3

**C**

Briefs and Other Related Documents
Shamoun v. Peerless Importers, Inc.E.D.N.Y.,2003.Only the Westlaw citation is currently available.

United States District Court,E.D. New York.
Isaac SHAMOUN, Plaintiff,
v.
PEERLESS IMPORTERS, INC., Defendant.
**No. 03 CV 1227(NG).**

Aug. 1, 2003.

Employee brought state-court action seeking employer's specific performance of agreement by which parties settled employee's prior administrative charge of age discrimination and his grievance under collective bargaining agreement (CBA). Employer removed action, and employee moved for remand and for award of attorney fees incurred in resisting removal and seeking remand. The District Court, Gershon, J., held that: (1) employee's claim was not completely preempted by Labor Management Relations Act (LMRA) for purposes of removal jurisdiction; (2) employer's intent to raise defense requiring interpretation of CBA did not establish existence of removal jurisdiction; (3) contention that enforcement of agreement could violate National Labor Relations Act (NLRA) did not establish existence of removal jurisdiction; and (4) employee was entitled to attorney fees.

Motion for remand granted.

West Headnotes

**[1] Labor and Employment 231H ⚷1967**

231H Labor and Employment
231HXII Labor Relations
231HXII(K) Civil Liabilities
231Hk1967 k. Preemption. Most Cited Cases
(Formerly 232Ak777.1 Labor Relations)

**Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

**States 360 ⚷18.46**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.45 Labor and Employment
360k18.46 k. In General. Most Cited Cases

Employee's breach of contract claim against employer, seeking specific performance of agreement by which parties settled employee's prior administrative charge of age discrimination and grievance under collective bargaining agreement (CBA), was not dependent upon interpretation of CBA, and thus was not completely preempted by Labor Management Relations Act (LMRA) for purposes of removal jurisdiction. Labor Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185.

**[2] Removal of Cases 334 ⚷25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

Pursuant to well-pleaded complaint rule, which allowed plaintiff to choose to have action heard in state court by eschewing claims based on federal law, employer's intent to raise defense to enforcement of settlement agreement with employee that purportedly would require interpretation of collective bargaining agreement (CBA), pursuant to Labor Management Relations Act (LMRA), did not establish existence of removal jurisdiction over action in which employee did not assert right under CBA and alleged breach of contract claim that did

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not require interpretation of CBA. Labor Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185.

**[3] Removal of Cases 334 ⚿25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

Employer's contention that enforcement of agreement by which parties settled employee's prior administrative charge of age discrimination and grievance under collective bargaining agreement (CBA) could violate National Labor Relations Act (NLRA), on grounds that it was unfair labor practice for employer to disregard bargaining representative by negotiating with individual employees with respect to working conditions, did not establish removal jurisdiction over employee's breach of contract action seeking specific performance of settlement agreement. National Labor Relations Act, § 1 et seq., as amended, 29 U.S.C.A. § 151 et seq.

**[4] Removal of Cases 334 ⚿107(11)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(11) k. Costs on Remand. Most Cited Cases

Pursuant to statute, employee was entitled to award of attorney fees incurred in resisting removal of his breach of contract action against employer and in obtaining remand of case, given that employee's complaint presented straightforward state-law breach of contract claim, issues presented as basis for removal jurisdiction were not novel and impropriety of removal was apparent, and improper removal of case delayed relatively simple action and added unnecessary litigation expenses that it would be unfair to require employee to absorb. 28 U.S.C.A. § 1447(c).

ORDER

GERSHON, J.

*1 On April 9, 2001, plaintiff, Isaac Shamoun, filed a charge of age discrimination against defendant, Peerless Importers, Inc., under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. with the Equal Employment Opportunity Commission ("EEOC"). On June 11, 2001, plaintiff filed a grievance under the collective bargaining agreement ("CBA") between defendant and United Food and Commercial Workers International Union, AFL-CIO, Local 2-D ("Local 2-D"). Both the age discrimination charge and the grievance concerned defendant's sales quota system. On August 6, 2001, plaintiff and defendant entered into an agreement ("Settlement Agreement") settling both the grievance and the EEOC charge. On March 10, 2003, plaintiff commenced this action by Order to Show Cause in New York Supreme Court, Nassau County, seeking specific performance of the Settlement Agreement. Plaintiff seeks injunctive relief, namely, that John and Antonio Magliocco, the principal owners of the defendant, be directed to comply with the terms of the Settlement Agreement. On March 13, 2003, defendant removed the action to federal court on the grounds that (1) plaintiff's claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and alternatively (2) plaintiff's claim is preempted by the National Labor Relations Act (" NLRA"), 29 U.S.C. § 160, because it may constitute an unfair labor practice. On March 27, 2003, plaintiff moved to remand, arguing that, as his claim does not arise out of a collective bargaining agreement or involve an unfair labor practice, this court lacks jurisdiction. Plaintiff also seeks an award of attorneys' fees relating to the expense of litigating the remand pursuant to 28 U.S.C. § 1447(c).

The material facts relevant to subject matter jurisdiction are not disputed. Plaintiff is employed by defendant as a wine and spirits salesperson and is a member of the collective bargaining unit represented by Local 2-D. Local 2-D is a signatory to a collective bargaining agreement ("CBA") with defendant. The CBA provides that defendant is allowed to set sales quotas for its employees, that disputes arising under the CBA are expressly subject to grievance and arbitration proceedings, and that individual agreements that alter the terms

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the CBA are void. The CBA does not require, nor does defendant argue, that age discrimination claims must be arbitrated.

The Settlement Agreement provides, among other things, that plaintiff and the Magliocco's will meet once monthly to discuss the sales quotas to ensure that the quotas are realistic. Plaintiff is now claiming that the Magliocco's failed to fulfill their obligations, on behalf of the defendant, under the Settlement Agreement by refusing to meet with him, by continuing to set unrealistic sales quotas and by continuing to discriminate against him.

Federal question jurisdiction sufficient to support removal is governed by the "well-pleaded complaint rule," which provides that jurisdiction exists solely where a federal question is presented on the face of the properly pleaded complaint. *Caterpillar Inc., et al. v. Williams et al.,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if that defense is anticipated in the complaint and is the only question at issue. *Id* . at 393. However, where an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Id.*

***2** [1] Section 301 of the LMRA governs claims founded directly on rights created by collective bargaining agreements and also claims substantially dependent on analysis of collective bargaining agreements. *Id.* at 395. Plaintiff argues that this case should be remanded because the complaint sets forth a contract claim that is independent of the CBA. The complaint demands specific performance of the terms of the Settlement Agreement, specifically, that the Magliocco's be required to hold monthly meetings with plaintiff and that realistic sales quotas be set at those meetings. Plaintiff argues that, as the Settlement Agreement grants him additional rights not afforded him under the CBA, his claims are not preempted. As the Supreme Court noted in *Caterpillar,* "individual contracts are not inevitably superseded by any ... collective bargaining agreement covering the individual employee, and claims based upon them may arise under state law." *Id.* at 396. Defendant counters that, because the Settlement Agreement resolved a grievance filed by the plaintiff under the CBA, the claimed breach of the Settlement Agreement necessarily involves the interpretation of the CBA.

In *Foy v. Pratt & Whitney Group,* 127 F.3d 229 (2d Cir.1997), the Court of Appeals for the Second Circuit held that a negligent misrepresentation claim was not preempted because the subject of the claim was outside the ambit of the collective bargaining agreement. There, the defendant argued, unsuccessfully, that plaintiff's claim was preempted because the question of whether an alleged promise of a pre-layoff transfer was false would be substantially dependent upon analysis of a collective bargaining agreement. Here, defendant makes substantially the same argument, namely, that plaintiff's claim is preempted because the issue of whether the defendant's obligations under the Settlement Agreement are enforceable requires an interpretation of the CBA. This argument fails because here, as in *Foy,* plaintiff's claims involve the breach of defendant's obligations under an agreement that is independent of the CBA and to which the union, Local 2-D, is not a party. Moreover, the Settlement Agreement arose, at least in part, out of the settlement of an EEOC charge that was completely independent of, and not subject to mandatory arbitration under, the CBA. *See generally Rogers v. New York University,* 220 F.3d 73 (2d Cir.2000).

*Wilds v. United Postal Service Inc.,* 2003 WL 21032022 (S.D.N.Y.2003), is also instructive. In *Wilds* the court found that, as plaintiff's *prima facie* case did not require an interpretation of the collective bargaining agreement, removal was not proper. Here, plaintiff's claim is a state law breach of contract, which can be demonstrated without an examination of the CBA. Plaintiff is claiming that defendant has breached its agreement to meet with him prior to setting sales quotas and to set realistic sales quotas. Plaintiff does not claim that he has the right to set the quotas himself. As stated in *Caterpillar,* a plaintiff covered by a collective bargaining agreement is permitted to assert state law contract rights, so long as the contract right

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

asserted is not provided by a collective bargaining agreement. Put simply, plaintiff's complaint is not dependent upon an interpretation of the CBA.

***3** [2] Defendant also argues that this court has jurisdiction because it will raise a defense to the enforcement of the Settlement Agreement requiring an interpretation of the CBA, namely, that Article X of the CBA prohibits any individual contracts between defendant and a member of the bargaining unit. While it is true that a defense to a state law claim based on the terms of the CBA will require the state court to interpret the CBA, the presence of a Section 301 question in a defensive argument does not overcome the paramount policies of the well-pleaded complaint rule. These policies, namely, "that a plaintiff is master of the complaint, that a federal question must appear on the face of the complaint, and that plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court" ensure that a "defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so the plaintiff would be master of nothing." *Caterpillar,* 482 U.S. at 398-399. Plaintiff does not assert a right under the CBA and his claim does not require an interpretation of the CBA. That defendant may raise the terms of the CBA as a defense to the enforcement of the Settlement Agreement does not establish that this court has removal jurisdiction over plaintiff's claim. *Id.* If defendant chooses to dispute the viability of the Settlement Agreement as contrary to the terms of the CBA, it may do so in state court. *Id.* at 397.

[3] Finally, defendant's contention that enforcement of the Settlement Agreement might violate the NLRA, because it is an unfair labor practice for an employer to disregard the bargaining representative by negotiating with individual employees with respect to working conditions does not, for reasons similar to those already stated, establish that this court has removal jurisdiction. *Caterpillar* at 398 n. 12. In sum, that defendant may ultimately prove that plaintiff's claims are preempted by the LMRA or the NLRA does not establish that they are removable to federal court. *Id.* at 398. For the above stated reasons, this action will be remanded to state court.

[4] In addition to a remand, plaintiff seeks to recover the attorneys' fees incurred in resisting the removal of this claim and seeking a remand. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." *See Circle Industries USA, Inc. v. Parke Construction Group, Inc.,* 183 F.3d 105, 108 (2d Cir.1999), *cert. denied* 582 U.S. 1062 (1999).

The commentary to the 1988 revisions to Section 1447 emphasizes that the goal of the fee provision is to deter improper removal. *See David D. Siegel, Commentary on 1988 Revision of Section 1447,* at 28 U.S.C. § 1447, p. 52 (1990 pocket part). As stated in *Circle Industries:*

***4** Removal is done *ex parte* and without need of a court order. A defendant removes a case from state court to federal court simply by filing a signed notice of removal in the United States district court. *See* 28 U.S.C. § 1446(a). While the simplicity of this procedure facilitates removal, it also exposes a plaintiff to the possibility of abuse, unnecessary expense and harassment if the defendant removes improperly, thereby requiring plaintiff to appear in federal court, prepare motion papers and litigate, merely to get the action returned to the court where the plaintiff initiated it.

By allowing a plaintiff to recover attorneys' fees where a case is remanded, Section 1447(c) serves the purpose of deterring improper removal. *Circle Industries* at 109.

Defendant argues that an award of costs and attorneys' fees is not appropriate here because there has not been a demonstration of improper or egregious conduct, and substantial arguments exist in favor of finding removal jurisdiction. As an initial matter, there is no bad faith prerequisite to an award of attorneys' fees under Section 1447; rather the award turns upon "overall fairness given the nature of the case, the circumstances of the remand and the effect on the parties." *Morgan Guaranty Trust Co. of New York v. Republic of Palau,* 971

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.2d 917, 923-24 (2d Cir.1999)(quoting the district court's opinion at 791 F.Supp.2d 561, 563 (S.D.N.Y.1991)). Here, plaintiff's complaint presents a straightforward state law breach of contract claim. While the court appreciates that removal under the well-pleaded complaint rule can be complicated, the issues presented here as a basis for removal jurisdiction are not novel. The impropriety of the removal is apparent given the clear applicability of *Caterpillar* and *Foy. See Greenidge v. Mundo Shipping Corporation,* 60 F.Supp.2d 10, 12 (E.D.N.Y.1999); *Cf. Wilds v. United Postal Service Inc. supra,* (declining to award attorneys' fees because "the full scope of the bases for the claims enumerated in those actions were not necessarily readily apparent from the face of the complaint.")

Congress has made a determination that the creation of a fee shifting statute was necessary to deter improper removal by ensuring that costs of such removal will be born by defendants. The improper removal of this case has delayed a relatively simple state law breach of contract claim and added unnecessary litigation expenses. It would be unfair to require plaintiff to absorb the cost of litigating the remand motion. *Id.* An award of fees will alleviate the expense, though not the delay, caused by the removal. Accordingly plaintiff's request for attorneys' fees is granted.

In sum, plaintiff's motion is granted and the Clerk of Court is directed to remand the action to New York Supreme Court, Nassau County. Plaintiff's request for attorneys' fees and costs is also granted. Plaintiff is directed to submit his application for fees by September 15, 2003. Any response by defendant shall be submitted by September 29, 2003. Any reply to defendants response shall be submitted by October 13, 2003.
*5 SO ORDERED.

E.D.N.Y.,2003.
Shamoun v. Peerless Importers, Inc.
Not Reported in F.Supp.2d, 2003 WL 21781954 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:03cv01227 (Docket) (Mar. 12, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.



**C**

Briefs and Other Related Documents

Ecology & Environment, Inc. v. Automated Compliance Systems, Inc.W.D.N.Y.,2001.Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

ECOLOGY & ENVIRONMENT, INC., Plaintiff,

v.

AUTOMATED COMPLIANCE SYSTEMS, INC., as Acquisition Corporation d/b/a Labvantage Solutions, Labvantage Solutions, Labvantage Solutions, Inc. and Chatterjee Management Company, Inc. d/b/a The Chatterjee Group, Defendants.

**No. 00-CV-0887E(F).**

Sept. 4, 2001.

Hugh C. Carlin, Esq., c/o Gross, Shuman, Brizdle & Gilfillan, Buffalo, for the Plaintiff.

Kathleen Sellers, Esq., c/o Hodgson Russ, Buffalo, Bernard J. Bonn, III, Esq. and Matthew A. Porter, Esq., c/o Dechert Price & Rhoads, Boston, MA, for the Defendant.

MEMORANDUM and ORDER

ELFVIN, S.D.J.

*1 Plaintiff commenced this action January 13, 2000 in New York State Supreme Court, Erie County, raising five state law causes of action-*viz.,* (1) breach of contract, (2) breach of the implied warranty of merchantability, (3) breach of the warranty of fitness for a particular purpose, (4) fraud and misrepresentation and (5) contractual attorney fees. Plaintiff is a New York corporation with its principal place of business in New York; defendants Automated Compliance Systems, Inc. (" ACS"), AS Acquisition Corporation d/b/a Labvantage Solutions ("AS Acquisition"), Labvantage Solutions ("LVS") and Labvantage Solutions, Inc. (LVS Inc.") (collectively the " Labvantage defendants") are Delaware corporations with their principal places of business in New Jersey [FN1] and defendant Chatterjee Management Co., Inc. d/b/a the Chatterjee Group ("Chatterjee") is a Delaware corporation with its principal place of business in New York. Defendants removed this action to this Court October 16, 2000 alleging that this Court has diversity jurisdiction because the amount in controversy exceeds $75,000, plaintiff and the Labvantage defendants are citizens of different states and Chatterjee had been fraudulently [FN2] joined to defeat federal subject matter jurisdiction. [FN3] Plaintiff moved to remand this case November 13, 2000 on two interrelated grounds-*viz.,* (1) that the removal was untimely pursuant to 28 U.S.C. § 1446(b) and (2) that this Court lacks subject matter jurisdiction because defendants cannot establish that Chatterjee was fraudulently joined and therefore there is incomplete diversity between the party plaintiff and the parties defendant. Plaintiff also seeks to recover the costs and attorney fees it incurred in connection with its motion to remand. In response to plaintiff's motion to remand, defendants filed a motion for summary judgment seeking to dismiss Chatterjee on the basis that plaintiff has no cognizable cause of action against it and fraudulently joined it as a defendant to prevent removal. Such motions were argued and submitted December 8, 2000 and have thereafter been before this Court for disposition.

FN1. Defendants claim that these four named defendants are a single entity; plaintiff disputes such. However, because such is not relevant for purposes of determining plaintiff's motion to remand, this Court will refer to them collectively as the Labvantage defendants solely for the sake of convenience.

FN2. Fraudulent joinder is a "legal term of art [used] to refer to the joinder of unnecessary or nominal parties in order to defeat federal jurisdiction." *Nosonowitz v. Allegheny Beverage Corporation,* 463

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.Supp. 162, 163 (S.D.N.Y.1978). *See* footnote 13.

FN3. A Corrected Notice of Removal was filed October 23, 2000 because the first page of the Complaint had been inadvertently omitted from the original Notice of Removal.

In March of 1997 plaintiff entered into an Agreement with ACS to purchase a Laboratory Information Management System ("LIMS"). ACS agreed to provide full planning, installation, configuration and project management service for the LIMS and gave plaintiff a "project performance guarantee" with respect to such. However, after it had been installed the LIMS not only failed to perform as guaranteed but it was not even "capable of performing in accordance with the parties' Agreement and the performance guaranty provided by Defendants." Com pl. ¶¶ 21-23, 25-26. Sometime after plaintiff had entered into the Agreement with ACS, ACS ceased to exist as a separate entity. Plaintiff believes that ACS has been acquired by and/or has merged into one or more of the other named defendants-including Chatterjee. In its Complaint, plaintiff alleged the following regarding its theory of liability against Chatterjee.

***2** "Upon information and belief, ACS was acquired and/or merged into AS Acquisition, LVS, LVS, Inc. and/or Chatterjee without regard for E & E's rights or E & E's claims set forth herein.

"Upon information and belief, Chatterjee is the owner of ACS, AS Acquisition, LVS and LVS, Inc. and holds itself out as the owner of such entities.

"Upon information and belief, ACS, AS Acquisition, LVS, LVS, Inc. and Chatterjee are and remain jointly and severally liable with respect to E & E's claims asserted herein.

"Upon information and belief, Defendants AS Acquisition, LVS, LVS, Inc. and Chatterjee became successors in interest to Defendant ACS and Defendants AS Acquisition, LVS, LVS, Inc. and Chatterjee together were responsible for continuing the planning, installation, configuration, project management and operation of the LIMS pursuant to the Agreement. Compl. ¶¶ 11-13, 24.

After reviewing the Complaint, defendants' attorney Matthew A. Porter, Esq. wrote to plaintiff February 11, 2000 requesting that it voluntarily dismiss Chatterjee from this case on the basis that Chatterjee bore no liability to plaintiff because it does not have an ownership interest in the Labvantage defendants and had no connection with the factual allegations in the Complaint. [FN4] Defendants' attorney Robert B. Conklin, Esq. wrote to New York Supreme Court Justice Patrick H. NeMoyer-to whom this case had been assigned-May 23, 2000 stating the same facts.[FN5] On July 27, 2000 defendants served interrogatories on plaintiff requesting it to, *inter alia,* state the basis for its "contention in paragraph 24 of the Complaint that Chatterjee became successor in interest to Defendant ACS and was 'responsible for continuing the planning, installation, configuration, project management and operation of the LIMS pursuant to the Agreement." ' Plaintiff filed its Responses to Defendants' First Set of Interrogatories and First Request for Production of Documents September 18, 2000, wherein it responded to the above interrogatory as follows.

FN4. "[W]e do not believe that Chatterjee Management Company, Inc. d/b/a The Chatterjee Group ("Chatterjee") is an appropriate party to this lawsuit * * *. Chatterjee does not hold an ownership interest in AS Acquisition Corp. or in any of the other named entities and had no relationship to or role in the activities that are the subject of the complaint. Accordingly, we propose that you voluntarily dismiss Chatterjee *without prejudice.* If disccvery later demonstrates that in your opinion Chatterjee should be in the case, we would not oppose your adding it as a party * * *." Rottaris Aff. Ex. B (Porter February 11, 2000 Letter) (emphasis in original).

FN5. "Chatterjee is not an appropriate party to this lawsuit. Chatterjee does not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> hold an ownership interest in LVS or in any of the other named entities and had no relationship to or role in the activities that are the subject of the complaint. We have so informed E & E's counsel and have proposed that Chatterjee be voluntarily dismissed *without prejudice,* and that if discovery later demonstrates that Chatterjee should be in the case, then we would not oppose adding Chatterjee back in as a party * * *." Rottaris Aff. Ex. E (Conklin May 23, 2000 Letter) (emphasis in original).

"RESPONSE: E & E objects to 'basis' as defined by Definition No. 10 in the Interrogatories. Notwithstanding the foregoing objection and without waiver thereof, a basis for this contention is as follows:

"1. Letter from John J. Fitzgerald and Donald R. Seitz of ACS dated July 7, 1997 stating that ACS and Labvantage have agreed to combine operations, that Labvantage has acquired ACS from a legal and financial standpoint, and that the two companies are merging their LIMS operations from an organizational and operational standpoint. This letter is served herewith as Bates No. 103;

"2. Labvantage website page dated March 27, 1998 stating that 'LabVantage Solutions (LVS) [Labvantage] was created early in 1997 with the merger of three of the top 10 LIMS vendors-Axiom Systems, Laboratory MicroSystems and Automated Compliance Systems.' The website page further states that Axiom Systems, [is] an operating subsidiary of The Chatterjee Group....' This website page is served herewith as Bates No. 104. See, also Labvantage website pages dated September 18, 2000 stating the relationship between Chatterjee Group and Labvantage Solutions, served herewith as Bates Nos. 139-140;

***3** "3. Labvantage Seedpak 97 Advanced Training Manual, dated 'Revised 10/8/97,' bearing twice, at a minimum, the statement 'Labvantage Solutions, A Chatterjee Group Company' which is served herewith as Bates Nos. 105-109;

"4. Letter to Michael Welch of E & E from Linda Fitzgerald of Labvantage, dated November 18, 1997, bearing letterhead entitled, 'LabVantage Solutions, A Chatterjee Group Company' which is served herewith as Bates No. 110;

"5. E & E Interoffice Memorandum to Gerry Strobel, Kevin Neumaier, Gary Hahn, Mike Welch and Marcia Galloway, from Nancy Siekmann, dated March 27, 1998, regarding having obtained Dun and Bradstreet information on Labvantage and Chatterjee Fund Management L.P. (a.k.a. Chatterjee Group) that 100% of Labvantage stock is owned by Purnandu Chatterjee, the primary principal in Chatterjee Fund Management, L.P. This memorandum is served herewith as Bates No. 111; and

"6. Dun & Bradstreet Report dated June 06, 2000 and served herewith as Bates Nos. 112-119.

"E & E reserves the right to supplement its' [*sic* ] response to any part of this Interrogatory upon further discovery." Pl.'s Resps. to First Set of Interrogs. of Def. AS Acquisition Corp. d/b/a Labvantage Solutions ¶ 6.

Plaintiff had served its own discovery requests on defendants August 30, 2000. One of its interrogatories requested defendants to"Identify the corporate relationship, if any, between Labvantage and The Chatterjee Group and between Labvantage and Chatterjee Management Co., Inc, Specifically, please state the following:

a. Whether Labvantage has a parent/subsidiary relationship with either or both the Chatterjee Group or [*sic* ] Chatterjee Management Co., Inc.

b. If subsection 'a' above is answered in the affirmative, please state the nature of the relationship, name of the related corporation, company or business, state of incorporation and principal place of business, names and addresses of any and all shareholders, directors and/or officers in common to both Labvantage and the related corporation, company or business." Rottaris Aff. Ex. I (Pl.'s First Set of Interrogs. to Defs. ¶ 3.)

Defendants never responded to this interrogatory-or to any of plaintiff's other discovery requests-Rottaris Aff. ¶¶ 10-13-but instead removed this case to this Court October 16, 2000 contending that plaintiff had fraudulently joined Chatterjee as a defendant.

In their Notice of Removal defendants stated that they had not become aware that this case was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

removable until September 18, 2000 when they received Plaintiff's Responses to Defendants' First Set of Interrogatories and First Request for Production of Documents. Corrected Notice of Removal ¶ 3. Defendants state that
"[a] review of those responses and documents reveal [*sic* ] that, contrary to the averments in the Complaint and contrary to the representations to Justice NeMoyer and to me, E & E was aware *nearly two years before it filed its Complaint* that Chatterjee was not a successor in interest to ACS and that E & E never had any dealings with Chatterjee. In other words, E & E's averments concerning Chatterjee were false, and Chatterjee had been fraudulently joined as a defendant in this action." Porter Aff. ¶ 7 (emphasis in original).

***4** Plaintiff's first basis for seeking to remand this case is that defendants' removal was untimely pursuant to 28 U.S.C. § 1446(b) FN6 because the notice of removal was filed more than thirty days after defendants had received the Complaint and the facts upon which defendants removed this case were evident from the face of the Complaint as reflected by defendants' counsel's letters to plaintiff and Justice NeMoyer.FN7 Defendants counter that they did not become aware that Chatterjee had been fraudulently joined thereby making this case removable until after they had received and reviewed plaintiff's interrogatory responses and that, because they removed this case within thirty days of receiving such, their notice of removal was timely.

FN6. "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based * * *.
"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable * * *." 28 U.S.C. § 1446(b).

FN7. Plaintiff does not argue that it was evident from the face of the Complaint that it had fraudulently joined Chatterjee; rather it argues that, contrary to defendants' assertions, its discovery responses did not reveal any facts to justify removal of this case which were not already evident from the face of the Complaint.

A notice of removal must be filed within thirty days of defendants' receipt of the complaint or, if the case is not subject to removal based upon the face of the complaint, within thirty days of defendants' receipt of an "amended pleading, motion, order or other paper FN8 from which it may first be ascertained that the case is one which is or has become removable * * *." 28 U.S.C. § 1446(b).

FN8. Responses to interrogatories constitute other papers for purposes of 28 U.S.C. § 1446(b). *See, e.g., Van Gosen v. Arcadian Motor Carriers,* 825 F.Supp. 981, 982 (D.Kan.1993); *Roberson v. Orkin Exterminating Company, Inc.,* 770 F.Supp. 1324, 1328 (N.D.Ind.1991); *Smith v. International Harvester Co.,* 621 F.Supp. 1005, 1007 (D.Nev.1985).

"Whether a case is removable according to the initial pleading depends on whether the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading, so that in its petition for removal defendant can make a short and plain statement of the facts which entitle it to remove as required in 28 U.S.C. § 1446(a)." *Richstone v. Chubb Colonial Life Insurance,* 988 F.Supp. 401, 402-403 (S.D.N.Y.1997).
The provision in 28 U.S.C. § 1446(b) regarding a case becoming removable refers to a case that is not removable based on the face of the complaint but later becomes removable through a later event of a jurisdictional nature. *Bertrand v. Vingan,* 899 F.Supp. 1198, 1199 (S.D.N.Y.1995). Defendants seeking to remove a case from state court must

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

strictly comply with the statutory requirements for removal. *Ibid.* Where there are doubts as to whether the statutory requirements have been met, they should be resolved against the removing defendants and the case should be remanded. *Ibid.* However,

"a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy. In order to show that naming a non-diverse defendant is a ' fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud [FN9] committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of plaintiff." *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460-461 (2d Cir.1998).

FN9. Although defendants have accused plaintiff of such-"it may very well be that E & E is guilty of outright fraud in the averments made in its Complaint and also in the representations made in the May 17, 2000 letter to Justice NeMoyer"-Defs.' Mem. of Law at 10-, they have not supported this accusation.

***5** "Because this jurisdictional inquiry is preliminary to any decision on the merits, the federal court resolves any uncertainties in applicable state law in plaintiffs' favor and subjects the complaint to less scrutiny than on a motion to dismiss for failure to state a claim." [FN10] *Intershoe, Inc. v. Filanto S.P.A.,* 97 F.Supp.2d 471, 474 (S.D.N.Y.2000).[FN11]

FN10. Defendants state that, "in its argument against this Court's assertion of subject matter jurisdiction, E & E trumpets that the allegations in its Complaint against Chatterjee are sufficient to survive a motion to dismiss. * * * Yet, the test for proper joinder is *not* merely whether counsel can artfully draft pleadings to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or its state court equivalent." Defs.' Mem. of Law at 9 (emphasis in original). However, defendants fail to state what they believe is the proper standard-although, based upon defendants' argument, it appears that they believe that the proper standard to determine if a non-diverse plaintiff has been fraudulently joined is the same as that needed to defeat a motion for summary judgment, albeit without plaintiff having the benefit of first obtaining discovery from defendant-Defs.' Mem. of Law at 11-13-and based on the holdings in *Pampillonia* and *Intershoe,* plaintiff's characterization of the standard is correct.

FN11. Internal citation omitted.

"This court need not decide whether, as a matter of New York law, the Complaint does indeed state a claim * * *. For the purposes of establishing this Court's lack of jurisdiction to make precisely those determinations, it suffices that the Complaint colorably asserts such a claim and that New York's liberal pleading rules leave open the possibility that the state court would deem the Complaint to state a claim * * *." *Id.,* at 476.[FN12]

FN12. Examples of the types of complaints that fail to assert even a colorable claim against a non-diverse defendant, such that it was fraudulently joined and can be ignored for purposes of determining a federal court's jurisdiction *vel non,* are present in two of the cases cited on page 9 of Defendants' Memorandum of Law wherein it is argued that plaintiff fraudulently joined Chatterjee. In *Pampillonia,* the only reference to the non-diverse defendant in the complaint was a statement that it "was incorporated in Delaware and has an office in New York, " 138 F.3d at 461, and, in *Rossbach v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> *Lorillard, Inc.*, the only allegation against the non-diverse defendant was that it was " a Delaware Corporation with its principal place of business in New York State." 71 F.Supp.2d 221, 223 (S.D.N.Y.1999).

Plaintiff argues that because it has raised a colorable claim against Chatterjee in its Complaint-*i.e.*, that Chatterjee is either the successor in interest to ACS and as such is liable for any defects in the LIMS that plaintiff purchased or that the Labvantage defendants are the successors in interest to ACS and, as the owner of the Labvantage defendants, Chatterjee is jointly and severally liable for any defects in the LIMS, Compl. ¶¶ 11-13, 24-defendants cannot establish that Chatterjee was fraudulently joined to defeat jurisdiction. Defendants state that, based upon the face of the Complaint, they were unable to conclude that plaintiff had fraudulently joined Chatterjee to prevent this case from being removed. This Court agrees. Premised upon the standard set forth in *Pampillonia* for determining whether a non-diverse defendant has been fraudulently joined, it cannot be stated that based upon the allegations in the Complaint there is no possibility that plaintiff can state a cause of action against Chatterjee in state court. *Pampillonia,* at 461. Having determined that a review of the face of the Complaint does not establish that plaintiff fraudulently joined Chatterjee to prevent removal, this Court must determine whether plaintiff's interrogatory responses established that this case was subject to removal because Chatterjee had been fraudulently joined as a defendant and, if so, whether defendants' removal was timely.

Defendants argue that plaintiff's discovery responses establish that Chatterjee had been fraudulently joined as a defendant to prevent this case from being removed because AS Acquisition, not Chatterjee, is the successor in interest to ACS and plaintiff was aware of such at the time it filed the Complaint.[FN13] However, defendants have not come close to satisfying their burden of proving by clear and convincing evidence that, after resolving any uncertainties in applicable state law in plaintiff's favor, there is no possibility based on the pleadings that plaintiff can state a cause of action against Chatterjee in state court. *See Pampillonia,* at 461; *Intershoe,* at 474. The information contained in plaintiff's discovery responses does not change the jurisdictional nature of the Complaint. *Bertrand,* at 1199. Furthermore and even if this Court were to accept defendants' assertions-*i.e.*, that AS Acquisition and Chatterjee are separate corporations and that AS Acquisition is the only successor in interest to ACS-as true, based upon the facts alleged in the Complaint, plaintiff is still entitled to attempt to "pierce the corporate veil" between Chatterjee and the Labvantage defendants. *Wm. Passalacqua Builders v. Resnick Developers South, Inc.*, 933 F.2d 131, 137-139 (2d Cir.1991); *Yoder v. Novo Mediagroup, Inc.*, No. 00 CIV. 5444(JSM), 2001 WL 62861, at *4-5 (S.D.N.Y. Jan. 24, 2001).[FN14]

> FN13. As noted by the undersigned in an earlier case and indicative of his viewpoint, "what appears to have been done by plaintiffs' attorneys was to work a scam on defendant whereby defendant would be unable to remove the case to this Court because plaintiffs' 'dummy defendant ' would be there 'rock-solid' to prevent such; such a practice is not to be tolerated by this Court and, hopefully, by no other tribunal."

> FN14. Relevant factors in determining whether one corporation so dominates another that the corporate veil between them should be pierced and the dominant corporation held liable for the liabilities of the dominated corporation include: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal at arms [*sic* ] length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *Passalacqua Builders,* at 139.

*6 In addition, even if defendants had established by clear and convincing evidence that plaintiff had fraudulently joined Chatterjee, this case would still have to be remanded because their notice of removal was untimely. Defendants filed their notice of removal on the basis that Chatterjee was not the successor in interest to ACS and that plaintiff never had any dealings with Chatterjee. This Court fails to understand why defendants would even need any discovery from plaintiff to determine whether Chatterjee is or is not the successor in interest to ACS; plaintiff never alleged that it had any dealings with Chatterjee, only with the now defunct ACS. Defendant AS Acquisition alleges that it is the successor in interest to ACS and defendant Chatterjee alleges that it is not; therefore defendants should certainly have known whether Chatterjee is the successor in interest to ACS without the necessity of first obtaining discovery from plaintiff. Whether plaintiff was in possession of sufficient evidence to definitively establish such at the time it filed the Complaint is irrelevant; based upon a review of limited information it then possessed-as reflected in its discovery responses-, plaintiff had enough evidence to form a good faith belief that Chatterjee was the successor in interest to ACS or the owner of the Labvantage defendants and accordingly was-and still is-entitled to explore this theory through discovery. *See Quinn v. Post,* 262 F.Supp. 598, 603 (S.D.N.Y.1967). Defendants have failed to establish by clear and convincing evidence that there is no possibility that a state court could consider the Complaint to state a cause of action against Chatterjee. Accordingly, this Court lacks jurisdiction to hear this case and plaintiff's motion to remand will be granted. Inasmuch as this Court is granting plaintiff's motion to remand, it is without jurisdiction to consider defendants' motion for summary judgment.

Plaintiff has also moved to recover its costs and attorney fees incurred in seeking to remand this case pursuant to 28 U.S.C. § 1447(c) which states that an "order remanding the case may require the payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." Assessment of costs and fees against the removing defendants is within the discretion of the court and does not require a finding of bad faith or frivolity on the part of the removing defendants. *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, (2d Cir.1992); *Thompson v. Williams,* No. 98-CV-6177 (ILG), 1998 WL 938778, at *2 (E.D.N.Y. Nov. 20, 1998). This Court will grant plaintiff's request to recover the costs and reasonable attorney fees it incurred in moving to remand this case. Defendants have failed to establish a reasonable basis for removal and by removing this case they prevented it from going to trial February 21, 2001 as had been scheduled in the state court. Plaintiff is directed to submit, within ten days of the entry of this order, an affidavit itemizing the disbursements and attorney fees it incurred in moving to remand this case and defendants may file any objections to such amounts within ten days thereafter and the matter will thereupon be, without oral argument, deemed to have been submitted.

*7 Accordingly, it is hereby *ORDERED* that plaintiff's motions to remand and to recover from defendants its costs and reasonable attorney fees incurred in connection with such motion are granted, that plaintiff shall submit an affidavit itemizing the amount of such fees and costs within ten days of the filing of this order, that defendants may file any objections to such amount ten days thereafter, that this Court shall retain jurisdiction over the parties solely for purposes of setting the amount of costs and attorney fees, that this Court is without jurisdiction to determine defendants' motion for summary judgment and that this case shall be remanded to New York State Supreme Court, Erie County.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

W.D.N.Y.,2001.
Ecology & Environment, Inc. v. Automated Compliance Systems, Inc.
Not Reported in F.Supp.2d, 2001 WL 1117160 (W.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00887 (Docket) (Oct. 16, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.