**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**CGI-NIT, LLC**

**Plaintiff**

**v.** **CA No. 06-470/T**

**NARRAGANSETT INDIAN TRIBE,**

**Defendant.**

**MOTION FOR RECONSIDERATION OF**
**DEFENDANT'S OBJECTION PLAINTIFF'S TO MOTION TO REMAND**

Now comes the defendant, Narragansett Indian Tribe ("Tribe"), a federally acknowledged and recognized Indian tribe and hereby moves for reconsideration of its objects to defendant's Motion to Remand and an Order of this Court granting Remand dated March 9, 2007. Attached hereto and in support hereof is the Tribe's Memorandum.

Presented by:

*/S/ John F. Killoy, Jr.*

JOHN F. KILLOY, JR. (#3761)
74 Main Street
Wakefield, RI 02879
(401) 783-6840
(401) 782-2490 Fax
*j.killoy@verizon.net*

**CERTIFICATION**

I hereby certify that on the 19th day of March, 2007 a true copy was electronically forwarded to Brian D. Gross, Esq., COOLEY MANION JONES, LLP, One Center Place Providence, RI 02903.

*/S/ John F. Killoy, Jr.*

**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**CGI-NIT, LLC**

**Plaintiff**

**v.** **CA No. 06-470/T**

**NARRAGANSETT INDIAN TRIBE,**

**Defendant.**

**DEFENDANT NARRAGANSETT INDIAN TRIBE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**

Plaintiff, CGI-NIT, LLC ("CGI") filed its Complaint in the Washington County Superior Court on September 12, 2006 alleging that defendant, Narragansett Indian Tribe ("Tribe"), a federally acknowledged and recognized Indian tribe, breached a Promissory Note ("Note") entered into between the parties on or about April 2, 2001. The Tribe filed a timely Petition for Removal on October 25, 2006. CGI filed its Motion to Remand on November 17, 2006 and the Court heard oral argument on February 16, 2007. An Order Granting the Motion to Remand was entered on March 9, 2007.

**PRELIMINARY STATEMENT**

The Order of March 9, 2007 sets forth that the Court lacked diversity jurisdiction "because an unincorporated Indian tribe is a stateless person that destroys diversity of citizenship" and that there is no federal question jurisdiction. The Tribe objects to both findings but will focus its Motion for Reconsideration on the later – that there is no federal question jurisdiction under 28 U.S.C. § 1331.

**1. Statement of Facts to Support Federal Question Jurisdiction Under IGRA**

Plaintiff's Complaint at ¶ 5 sets forth the following allegation, which sets the stage for finding that federal question jurisdiction exists in this dispute:

> "In or around 1993, Capital Development Gaming Corporation ("CDGC") and the Tribe entered into a business relationship *for the purpose of establishing and developing a casino/gaming facility* in Rhode Island. The business relationship ended in or around 1999." [Emph. Added]

The business relationship between the Tribe and CDGC (a successor in interest to Capital Development Gaming Corporation) ("Capital Gaming") was solely for the purpose of developing a gaming facility pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq*.

There is an extensive history of legislative action and litigation that surrounds the Narragansett Tribe's efforts to develop a gaming facility in the State of Rhode Island. One constant participant, as stated by CDGC is uncontested, that is for a period in or around 1993 through 1999, Capital Gaming was partnered with the Tribe in this venture at every step in the process as set forth below.

In 1992, the Tribe entered into a Management Development Agreement with British American Bingo and pursuant to IGRA requested that the State of Rhode Island enter into a compact for gaming on the Tribe's Settlement Lands. *Exhibit 1, Letter to Governor Sundlun, dated July 14, 1992*. The State filed suit challenging the Tribe's right to pursue gaming under IGRA. *State of Rhode Island v. Narragansett Indian Tribe*, 816 F.Supp. 796 (D.R.I. 1993).

In March 1993, while the compact litigation was pending British American Bingo was acquired by Capital Gaming. *See, Exhibit 4, infra.*

Judge Pettine stated in *State of Rhode Island v. Narragansett Indian Tribe*, 816 F.Supp. at 798, that IGRA "provides a comprehensive framework for regulation of gambling on indian lands." He went on to hold "that the Gaming Act (IGRA) is applicable to the Narragansett Tribe's settlement lands." And that "the State of Rhode Island must now enter into good faith negotiations with the Narragansett Tribe for the purpose of forming a Class III Tribal-State Compact." *Id.* at 806.

The State appealed Judge Pettine's decision to the United States Court of Appeals for the First Circuit Court which found that the Tribe had the requisite jurisdiction and governmental authority under IGRA and held "that the provisions of the Indian Gaming Regulatory Act apply in full force to the lands in Rhode Island now held in trust by the United State for the Narragansett Indian Tribe." *State of Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 705 (1st. Cir. 1994). The State's Petition for Certiorari was denied on October 3, 1994. *State of Rhode Island v. Narragansett Indian Tribe*. 513 U.S. 919 (1994).

Thereafter, the Tribe with its partner Capital Gaming negotiated with the Governor of the State of Rhode Island a Tribe-State Compact, which was executed on August 29, 1994. *See, Exhibit 4, infra.*

The Tribe-State Compact required approval of the Secretary of the Interior which occurred on December 5, 1994, the Assistant Secretary-Indian Affairs, on behalf of the Secretary of the Interior, approved the Tribal-State Compact, which became effective on December 16, 1994 (59 Fed. Reg. 65066)." *Exhibit 2, Letter dated December 5, 1994 from Ada Deer to Tribe; and, Exhibit 3, Federal Register Notice.*

On June 17, 1995, the Tribe and Capital Gaming entered into an "Amended and Restated Management and Development Agreement" ("Management Agreement") which sets out the relationship and obligations of the Tribe and Capital Gaming to develop pursuant to IGRA a casino/gaming facility for the "purpose of assisting the Tribe in establishing and operating on aboriginal tribal lands of the Tribe near Charlestown held in trust by the United State." *Exhibit 4, Management Agreement at pg 1*[1].

On June 21, 1995, the Management Agreement was submitted for approval to the National Indian Gaming Commission ("NIGC") pursuant to Section 2711 of IGRA. *See, Exhibit 4, NIGC date stamp on cover page to Management Agreement.*

Challenges to the Tribe and Capital Gaming continued with a decision from the Rhode Island Supreme Court, which held that the Tribe-State Compact was void on state constitutional grounds in that the Governor lacked the authority to execute and bind the state to the compact. *Narragansett Indian Tribe v. State of Rhode Island,* 667 A.2d 280 (RI 1995).

Faced with this setback the Tribe still had its rights under IGRA that had been affirmed by the First Circuit to conduct certain types of gambling on their Tribal trust lands and proceeded with plans for a bingo facility. The State too had not given up and sought Congressional action to exclude the Narragansett's from the rights afforded to federally recognized tribes under IGRA. The late Senator John Chafee, in the 1997 Omnibus Appropriations Act, P.L. 104-208, succeed in amending the Rhode Island

[1] The entire Management Agreement exceeds 80 pages, attached for purposes of this Motion are the cover page and pages 1 to 5, the "Whereas" clauses and Section I, "Purpose." The entire document has been a matter of public record and certainly in the possession of CGI. Should either the Court or counsel for the plaintiff require the entire document it will be made available.

Indian Claims Settlement Act to exclude the Narragansett Indian Tribe's settlement lands from the provisions and benefits of IGRA. *See*, 25 U.S.C. § 1708(b).

On December 16, 1996, after twenty-one months of review, the NIGC states that the parties "have been working together to bring the Contract into regulatory compliance for approval by the NIGC" but it was nonetheless bound to disapprove the Management Agreement because of the recent Chafee Amendment.[2] *Exhibit 5, Letter dated December 16, 1996 from NIGC to Tribe and Capital Gaming*. The Tribe and Capital Gaming appealed and on January 17, 1997, the NIGC issued a final determination to disapprove the Management Agreement on the basis that the "Settlement Land has been removed from the application of IGRA." *Exhibit 6, Letter dated January 17, 1997 from NIGC to Tribe and Capital Gaming*. The Tribe and Capital Gaming appealed this action, which was upheld by the United States Court of Appeals for the District of Columbia on October 27, 1998. *Narragansett Indian Tribe v. NIGC,* 158 F.3d 1335 (C.A.D.C. 1998),

The Tribe terminated its relationship with Capital Gaming in 1999 and entered into a settlement agreement memorialized in the Promissory Note that is the subject of this action along with mutual releases also executed on April 2, 2001. The "Release" sets out that the Promissory Note is in consideration for the $10,000,000 advanced by Capital for expenses arising from the Management Agreement and from any further obligations under the Management Agreement. *Exhibit 7*.

---

[2] See also *Exhibit 8*, Affidavit of William S. Pappazian, General Counsel for Capital Development Gaming Corporation, Inc, (Capital Gaming) dated February 18, 1997 and submitted in *Narragansett Indian Tribe v. NIGC,* Ca No. 97-334.

The facts are clear, that CGI and the Tribe had single business relationship and purpose, which was to establish and develop an IGRA gaming facility in Rhode Island.[3]

**2. Federal Question Jurisdiction Under IGRA**

Congress has declared that the purpose of IGRA is to "provide a statutory basis for the operation of gaming by Indian tribe as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1).

Furthermore, Congress stated purpose was,

> to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue. 25 U.S.C. § 2702(3)

As Judge Pettine stated in *State of Rhode Island v. Narragansett Indian Tribe*, 816 F.Supp. at 798, IGRA "provides a comprehensive framework for regulation of gambling on indian lands."

At ever turn and at every moment the Tribe and Capital Gaming conducted their business relationship to comply with the provisions of IGRA. From the issuance of a request to the Governor to negotiate a Tribe-State Compact right through to the approval process before the NIGC of the Management Agreement. To now say that the termination of this IGRA relationship and the resulting settlement is outside the scope of IGRA is to deny the Tribe the federal protections provided for by Congress.

The Note and Release read together clearly are in settlement of the parties' relationship developed under the umbrella of IGRA. Indeed, the Note specifically

---

[3] There was a brief period in 1998-99 when Capital and the Tribe explored gaming sites in Providence and West Warwick, the importance of which has does not change the fact that the Management Agreement and the resulting Release and Note arose from their IGRA relationship.

provides that "the obligation to pay such debt shall be limited to revenues, dividends or other payments payable or due the Tribe or any Tribal Entity and arising from or in connection with any Casino Project." *See, Note ¶ 1.4.*

A "Casino Project" includes "any gaming, casino or similar facility, project or enterprise, whether on Tribal land. Settlement Act land, trust land or commercial land . . . within the State of Rhode Island. *See, Note ¶ 1.*

The clear language and intent of IGRA is to <u>promote</u> Tribal gaming as a means of economic development and <u>protect</u> such Tribal gaming as a means of generating tribal revenue. 25 U.S.C. § 2702(1) and (3). Any gaming revenues used to make payments on the Note fall within the comprehensive scope and mean of IGRA.

The regulations adopted by NIGC provide for the execution of '"Collateral Agreements" that may be separate and distinct from a "Management Contract".

A *collateral agreement* as defined by 25 C.F.R. § 502.5

> means any contract, whether or not in writing, that is related, either directly or indirectly, to a management contract, or to any rights, duties or obligations created between a tribe (or any of its members, entities, or organizations) and a management contractor or subcontractor (or any person or entity related to a management contractor or subcontractor).

A *management agreement* as defined by 25 C.F.R. § 502.15

> means any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation.

In *Machal, Inc. v. Jena Band of Choctaw Indians,* 387 F.Supp.2d 659, 666-67 (W.D. La. 2005), the court distinguishes the definitions of a *collateral agreements* and *management agreements* under IGRA and concludes that they maybe wholly separate and distinct instruments. Only those collateral agreements that provide for true

management of operations are void for lack of NIGC approval. The court further states that permitting collateral agreements, such as those that are "precursors to the creation and licensing of a gaming operation" support the underlying policies of IGRA by encouraging financial backers to invest in Tribal economic development through gaming. *Id*. What the *Machal* court did not say was that such collateral agreements were outside the broad comprehensive scope of IGRA.

Certainly the Note and Release are directly related to the Management Agreement, create obligations and duties upon the Tribe for repayment and should be considered a collateral agreement under IGRA.

There is at least one court that has considered whether the broad scope of Congressional intent under IGRA and the federal policy of promoting tribal self-sufficiency and self-determination as preempting state law claims. In *Gaming Corporation of America v. Dorsey & Whitney,* 88 F.3d 536, 547 (8th Cir. 1996), the Court held that "IGRA has the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well-plead complaint rule."

In this case the court has found that there is no federal question presented in Plaintiff's Complaint. Given the broad policy of IGRA and the long relationship between the parties to comply with the Act preemption under *Gaming Corp*. would be appropriate.[4]

It is without question, as set forth in ¶ 5 of the Complaint, that the *business relationship* between the Tribe and CDG/Capital Gaming *for the purpose of establishing*

---

[4] The *Gaming Corp*. court also reasons that preemption is appropriate when viewed in the overall context of federal Indian law, the canons of construction that resolve statutory ambiguity in favor of Indians and under principles of the Indian commerce clause. *Id. at* 547-548

*and developing a casino/gaming facility in Rhode Island* "arises under" federal law – specifically federal Indian law through IGRA – thereby stratifying the requirements of federal question jurisdiction pursuant to 28 U.S.C. § 1331. "The Supreme Court has ruled that, in order to invoke a federal district court's jurisdiction under § 1331, it was not essential that petitioners base their claim on a federal statute or a provision of the Constitution." *Ninigret Dev. Co. v. Narragansett Indian Housing Authority,* 32 F.Supp.2d 497, 503 (D.R.I. 1999), *citing to National Farmers Union v. Crow Tribe,* 471 U.S. 845, 850 (1985) (Finding federal question jurisdiction founded upon federal common law.)

## CONCLUSION

For those reasons stated herein the Tribe's Motion for Reconsideration should be granted and CGI's Motion to Remand must be denied.

NARRAGANSETT INDIAN TRIBE

Presented by:
*/S/ John F. Killoy, Jr.*

JOHN F. KILLOY, JR. (#3761)
74 Main Street
Wakefield, RI 02879
(401) 783-6840
(401) 782-2490 Fax
*j.killoy@verizon.net*

## CERTIFICATION

I hereby certify that on the 19th day of March, 2007 a true copy was forwarded electronically, to Brian D. Gross, Esq., COOLEY MANION JONES, LLP, One Center Place Providence, RI 02903.

*/S/ John F. Killoy, Jr.*