NATIONAL
INDIAN
GAMING
COMMISSION

Mr. Charles A. Hobbs
Hobbs, Straus, Dean & Walker
1819 H Street, N.W., Suite 800
Washington, D.C. 20006

Mr. William S. Papazian
Vice President and General Counsel
Capital Development Gaming Corporation
Bayport One, Suite 250
8025 Black Horse Pike
W. Atlantic City, NJ 08232

Mr. Randy Noka, First Councilman
Narragansett Indian Tribe
P.O. Box 268
Charlestown, RI 02813

January 17, 1997

Gentleman:

This letter constitutes the final decision of the National Indian Gaming Commission (NIGC) regarding Chairman Monteau's December 16, 1996, disapproval of the management agreement between the Narragansett Tribe (Tribe) and Capital Development Gaming Corporation. As discussed below, we have determined that the Chairman's decision to disapprove the management agreement should be upheld. Your appeal is therefore denied.

BACKGROUND

On June 21, 1995, the Narragansett Tribe and Capital Development Gaming Corporation submitted a management agreement between the parties to the NIGC for review and approval pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2711. Review of the management agreement proceeded until December 16, 1996.

On September 30, 1996, President Clinton signed P.L. 104-208. Part of this enactment amended the Rhode Island Indian Claims Settlement Act, 25 U.S.C. § 1708, to remove the settlement lands referred to therein from the application of IGRA. P.L. 104-208 states that the Tribe's "settlement lands shall not be treated as Indian lands" for purposes of IGRA.

On December 16, 1996, the NIGC disapproved the management agreement between the Narragansett Tribe and Capital Development Gaming

Corporation. The Chairman, in his disapproval letter, stated that "[b]ecause the Settlement Land has been removed from the application of IGRA and shall not be treated as Indian lands, the NIGC may not approve the Contract. Therefore, your Contract is disapproved."

On December 20, 1996, the NIGC received an appeal from Charles A. Hobbs on behalf of the Narragansett Tribe. On January 10, 1997, the NIGC received an appeal from William S. Papazian on behalf of Capital Gaming Development Corporation.

DISCUSSION

The NIGC's statutory and regulatory powers are limited to approving management agreements governing the conduct of gaming on "Indian lands" within the meaning of IGRA. See 25 U.S.C. § 2710(b)(1)(A). "Indian lands" are defined as

> a) all lands within the limits of any Indian reservation, and
>
> b) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

See 25 U.S.C. § 2703(4). However, P.L. 104-208 states that the Narragansett Tribe's lands at issue are not "Indian Lands" as defined by the Indian Gaming Regulatory Act.

In your appeal letter, you argue that the portion of P.L. 104-208 that removes the Tribe's lands from the definition of "Indian Lands" contained in the Indian Gaming Regulatory Act is void as contrary to the Equal Protection Clause of the U.S. Constitution. Thus, you believe that the Tribe's lands qualify as "Indian Lands" under IGRA and that the management agreement should be approved.

Notwithstanding your argument, P.L. 104-208 plainly states that the Narragansett Tribe's lands at issue do not qualify as "Indian Lands" as defined by the Indian Gaming Regulatory Act. Until a court of competent jurisdiction determines that the portion of P.L. 104-208 that removes the Tribe's lands from the definition of "Indian lands" under IGRA is unconstitutional, the National Indian Gaming Commission must follow the law as prescribed by Congress and signed by the President. Gaming may not be conducted on the lands at issue unless the lands qualify as "Indian lands." Because the management agreement between the parties calls for the conduct of gaming activities on lands that are not "Indian lands" as defined by IGRA, any gaming conducted on those lands would violate the Indian Gaming Regulatory Act. Thus, we believe the Chairman was correct to disapprove the management agreement.

CONCLUSION

For the foregoing reasons, the Chairman's decision to disapprove the management agreement between the parties is upheld, and your appeal is denied. This decision if final for the National Indian Gaming Commission.

Commissioner

Commissioner

Commissioner