A FILE

STATE OF RHODE ISLAND
WASHINGTON, SC

SUPERIOR COURT

CGI-NIT, LLC

Plaintiff,

v.

NARRAGANSETT INDIAN TRIBE

Defendant.

DOCKET NO.:

SUPERIOR COURT FILED SEP 12 2006 WASHINGTON COUNTY COURTLAND R. CHAPMAN JR. CLERK

**COMPLAINT**

**INTRODUCTION**

1. This is an action to enforce a promissory note between Plaintiff CGI-NIT, LLC ("CGI-NIT") and Defendant Narragansett Indian Tribe (the "Tribe") dated April 2, 2001 in the amount of $10,000,000 (the "Note").

**PARTIES**

2. Plaintiff CGI-NIT is an Illinois limited liability company with a principal place of business at 1560 Sherman Avenue, Suite 900, Evanston, Illinois. CGI-NIT is the holder of a promissory note dated April 2, 2001 in the amount of $10,000,000 (the "Note"). (See infra ¶ 11.) A copy of the Note is attached hereto as Exhibit 1.

3. Defendant Tribe is a federally recognized Indian Tribe of the State of Rhode Island with an administrative office at 4375-B South County Trail, Charlestown, Rhode Island.

4. Under the terms of the Note, the Tribe expressly waived any applicable sovereign immunity in connection with the collection of the Note and consented to be subject to Rhode Island law and jurisdiction. (See Note at ¶¶ 2.6, 2.10.) The Tribe also waived presentment, notice of dishonor and protest of the Note. (See Note at ¶ 2.1.)

**FACTS COMMON TO ALL COUNTS**

5. In or around 1993, Capital Development Gaming Corporation ("CDGC") and the Tribe entered into a business relationship for the purpose of establishing and developing a casino/gaming facility in Rhode Island. The business relationship ended in or around 1999.

6. On or about April 2, 2001, the Tribe executed and delivered the Note to CDGC.

7. The Note arose out of a settlement between the Tribe and CDGC regarding repayment of monies CDGC and/or its parent, Capital Gaming International, Inc. ("Capital Gaming"), had spent on behalf of the Tribe during their relationship.

8. The Tribe's payment obligation under the Note begins on the sixtieth (60th) calendar day (the "Commencement Date") after the opening of any gaming, casino or similar facility, project or enterprise ("Casino Project") as to which the Tribe is directly or indirectly involved in Rhode Island. (See Note at ¶ 1.1.)

9. The Note provides that the Tribe must make payments in eighty-three (83) monthly installments of $119,000.00 followed by an eighty-fourth (84th) and final month's installment of $123,000.00. (See id.)

10. In addition, under the Note, interest on the outstanding principal balance begins to accrue on the Commencement Date. Interest accrues at a rate equal to the prime rate announced by Fleet Bank, N.A. (now Bank of America) plus one (1) percent. (See Note at ¶ 1.3.)

11. On or about July 20, 2006, CDGC assigned the Note to Capital Gaming, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for such promissory note, and any and all documents and instruments related thereto. Immediately thereafter, Capital Gaming assigned the Note and the related rights to Plaintiff CGI-NIT. There is no prohibition on assignments under the Note. Copies of the assignments are attached hereto as Exhibit 2.

12. Upon information and belief, on or about November 1, 2005, 1,750 new video lottery terminals went online at a gaming and entertainment facility located at 1600 Loisquisset Pike, Lincoln, Rhode Island (the "New VLT Gaming Enterprise").

13. Under R.I. Gen. Laws § 42-61.2-7 (Division of Revenue), the Tribe is to be paid five (5) percent of the net terminal income from the New VLT Gaming Enterprise.

14. The New VLT Gaming Enterprise constitutes a Casino Project as defined under the Note. (See Note at ¶ 1.1.)

15. The Tribe's direct or indirect involvement in the New VLT Gaming Enterprise triggers the payment provisions of the Note.

16. Under the Note, the Commencement Date on which the Tribe's payment obligation began was on or before December 31, 2005 - the sixtieth (60th) calendar day after the November 1, 2005 opening.

17. Under the Note, interest also began to accrue on or before December 31, 2005.

18. On or about July 19, 2006, the Rhode Island Department of Administration sent a letter to the Tribe stating that, based upon the Revenue Estimating Conference's final calculation of the net terminal income for Fiscal Year 2006, $392,547.00 is payable and due to the Tribe. A copy of the July 19, 2006 letter to the Tribe is attached hereto as Exhibit 3.

19. This income, and all future income the Tribe will receive from the New VLT Gaming Enterprise, is revenue "payable or due to the Tribe or any Tribal Entity and arising from or in

connection with any Casino Project" per Paragraph 1.4 of the Note.

**COUNT I**
**BREACH OF CONTRACT**

20. CGI-NIT repeats and reincorporates herein its allegations contained in Paragraphs 1 through 19 above.

21. CGI-NIT and the Tribe entered into a valid, binding, enforceable contract, namely the Note.

22. Pursuant to the plain terms of the Note, CGI-NIT is entitled to receive revenue, dividends or other payments arising from or in connection with any Casino Project with which the Tribe is directly or indirectly involved.

23. The Tribe has become directly or indirectly involved in the New VLT Gaming Enterprise.

24. Income from the New VLT Gaming Enterprise has been paid or is payable and due to the Tribe and/or a Tribal Entity.

25. To date, the Tribe has failed to make payment(s) due under the Note.

26. Paragraph 1.6 of the Note provides that an event of Default occurs "[i]f the Obligor . . . breaches its obligation to pay or provide principal, interest or any other amount payable hereunder when due . . . ."

27. As a result of the Tribe's failure to provide funds for payment under the Note, the Tribe has Defaulted on the Note.

28. Paragraph 1.6 of the Note further provides that, in the even of Default, "all principal and other amounts payable hereunder shall be accelerated and due in full immediately, without demand or notice . . . ."

29. Accordingly, CGI-NIT accelerated the indebtedness owing pursuant to Paragraph 1.6 of the Note.

30. CGI-NIT has suffered and will continue to suffer damages.

31. Under Paragraph 2.4 of the Note, CGI-NIT is entitled to payment or reimbursement of its costs and expense of enforcing the Note, including, without limitation, reasonable attorneys' fees.

**COUNT II**
**BREACH OF CONTRACT**

32. CGI-NIT repeats and reincorporates herein its allegations contained in Paragraphs 1 through 31 above.

33. Paragraph 2.3 of the Note provides that the Tribe shall keep the "Payee generally informed as to developments concerning any Casino Project, proposed or actual, related legislation and the role and financial prospects of Obligor [i.e. the Tribe] in connection therewith."

34. To date, the Tribe has never provided CDCG with any information concerning any Casino Project, including the New VLT

Gaming Enterprise as required by Paragraph 2.3 of the Note, since the execution of the Note.

35. As a result of the Tribe's failure to provide CDCG with any information concerning the New VLT Gaming Enterprise, the Tribe has Defaulted on the Note.

36. Paragraph 1.6 of the Note provides that an event of Default occurs "[i]f the Obligor [i.e. the Tribe] . . . breaches its obligation . . . to perform its obligations hereunder."

37. Accordingly, CGI-NIT accelerated the indebtedness owing pursuant to Paragraph 1.6 of the Note.

38. CGI-NIT has suffered and will continue to suffer damages.

39. Under Paragraph 2.4 of the Note, CGI-NIT is entitled to payment or reimbursement of its costs and expense of enforcing the Note, including, without limitation, reasonable attorneys' fees.

## COUNT III
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40. CGI-NIT repeats and reincorporates herein its allegations contained in Paragraphs 1 through 39 above.

41. The Note imposes an implied covenant of good faith and fair dealing between the parties.

42. Moreover, Paragraph 2.3 of the Note imposes on the Tribe the requirement that it inform CDGC as to developments

concerning any Casino Project, proposed or actual, related legislation and the role and financial prospects of the Tribe in connection therewith.

43. Upon information and belief, the Tribe has known for an extended period of time of a Casino Project, as well as related legislation and the role and financial prospects of the Tribe in connection therewith.

44. Despite its obligations under Paragraph 2.3 of the Note, the Tribe has never provided any information concerning any Casino Project, related legislation or the Tribe's role and financial prospects in connection therewith.

45. In addition, Paragraph 1.1 of the Note requires that the Tribe meet certain payment obligations arising from or in connection with any Casino Project with which the Tribe is directly or indirectly involved.

46. Upon information and belief, on or about November 1, 2005, 1,750 new video lottery terminals went online at the New VLT Gaming Enterprise and the Tribe's payment obligation triggered thereafter.

47. Yet, to date, the Tribe has not made any payment(s) or offered to make any payment(s) due under the Note.

48. In failing to make any reasonable efforts to comply with the plain terms of the Note, including Paragraphs 2.3 and 1.1 for an extended period of time, the Tribe has breached the

covenant of good faith and fair dealing implied in the agreement.

49. As a result of the Tribe's breach of the implied covenant of good faith and fair dealing, CGI-NIT has suffered and will continue to suffer damages.

50. Under Paragraph 2.4 of the Note, CGI-NIT is entitled to payment or reimbursement of its costs and expense of enforcing the Note, including, without limitation, reasonable attorneys' fees.

**WHEREFORE**, CGI-NIT prays this honorable Court enter judgment in its favor on all counts of this Complaint and grant the following relief:

a. Under Count I, issue a judgment declaring that the Tribe has breached its contact with CGI-NIT by refusing to comply with its contractual payment obligation.

b. Under Count I, issue a judgment awarding CGI-NIT damages in an amount to be determined at trial, together with interest, costs and attorneys' fees.

c. Under Count II, issue a judgment declaring that the Tribe has breached its contract with CGI-NIT by failing to provide any information concerning any Casino Project and by refusing to comply with its contractual payment obligation.

d. Under Count II, issue a judgment awarding CGI-NIT damages

in an amount to be determined at trial, together with interest, costs and attorneys' fees.

e. Under Count III, issue a judgment awarding CGI-NIT damages in an amount to be determined at trial, together with interest, costs and attorneys' fees.

f. Grant such other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Brian D. Gross, RI Bar # 6891
COOLEY MANION JONES LLP
One Center Place
Providence, RI 02903
(401) 273-0800

AND

Harry L. Manion III, MA BBO # 317440
Paul F. Beckwith, MA BBO # 550186
Christopher J. Cunio, MA BBO # 634518
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100

Dated: September 12, 2006
165157v1

# PROMISSORY NOTE

$10,000,000 April 2, 2001

FOR VALUE RECEIVED, THE NARRAGANSETT INDIAN TRIBE, a federally recognized Indian Tribe ("Tribe") and its successors and assigns ("Obligor") unconditionally promises to pay to the order of CAPITAL DEVELOPMENT GAMING CORPORATION a Rhode Island corporation, and its successors and assigns ("Payee") the principal sum of TEN MILLION and No/100 DOLLARS ($10,000,000) in accordance with the payment provisions hereinafter set forth.

1. Terms of Note.

1.1. **Payment of Principal.** All unpaid principal of this Note shall be due and payable in 83 equal monthly installments of $119,000 followed by an 84th and final month's installment of $123,000, beginning on the sixtieth (60th) calendar day (the "Commencement Date") after the opening of any gaming, casino or similar facility, project or enterprise, whether on Tribal land, Settlement Act land, trust land or commercial land, and/or any such substituted facility, project or enterprise, and any expansion thereof, wholly or partially within the State of Rhode Island ("Casino Project") as to which the Tribe, the Tribal Gaming Commission, any Tribal administrative agency, any wholly or partially owned or controlled subsidiary, corporation or other entity or agent or representative, and members, affiliates, successors and assigns of any of the foregoing, present or future (altogether, the "Tribal Entities"), is owner, controller, sponsor or is otherwise involved, directly or indirectly; with interest as provided below, subject to Section 1.6 hereof.

1.2. **Prepayment.** Any unpaid principal of this Note may be prepaid at any time, without premium or penalty. All prepayments shall be applied first to accrued interest and any other charges or fees outstanding at the time prepayment is made and second to the outstanding principal balance.

1.3. **Interest.** Interest will be charged on the outstanding principal balance of this Note from the Commencement Date until the full amount of principal due hereunder has been paid, at a rate equal at all times to the prime rate of Fleet Bank, N.A. as of the Commencement Date plus one per cent per annum (the "Interest Rate"), payable monthly along with principal installments. Any principal, interest or other amounts payable hereunder but not paid when due shall bear interest until paid at said prime rate plus three per cent per annum (the "Overdue Interest Rate"). Interest charged hereunder shall be computed daily on the basis of a 360 day year for the actual number of days elapsed.

1.4. **Payment Terms.** All payments due under this Note shall be continuing, unconditional and full-recourse debt of the Obligor, provided that the obligation to pay such debt shall be limited as to source to revenues, dividends or other payments payable or due to the Tribe

or any Tribal Entity and arising from or in connection with any Casino Project. All payments made hereunder shall be made on the due date thereof, in immediately available funds and in lawful currency of the United States of America. All payments made hereunder shall be made to Payee at its offices set forth in this Note, or at such other address as Payee shall notify Obligor in writing, or deposited in or wire transferred to a bank account specified by Payee.

1.5. **Security.** As security for the payment of the monies owing under this Note. Obligor hereby assigns and pledges to Payee and grants to Payee a security interest in all such revenues, dividends or other payments and agrees that Payee may file financing statements in any office or place in Rhode Island as Payee may deem necessary or advisable to perfect such interest, and authorizes Payee to sign the name of the Tribe to such statements as attorney in fact, said authority being coupled with an interest and irrevocable. Obligor will execute any such financing statement and such further documents or instruments as Payee may request in support of the foregoing.

1.6 **Default.** If Obligor or any Tribal Entity providing funds for payment under this Note, as applicable, (i) breaches its obligation to pay or provide principal, interest or any other amount payable hereunder when due or to perform its obligations hereunder, (ii) becomes insolvent, bankrupt, subject to receivership, or files an assignment for the benefit of creditors. (iii) breaches its obligations under its Release being given concurrently herewith to Payee or (iv) allows any conflicting assignment, pledge or security interest in said revenues, dividends and payments, then (a) all principal and other amounts payable hereunder shall be accelerated and due in full immediately, without demand or notice, upon occurrence of any such event and (b) Payee shall then have all rights to enforce or collect all such amounts as may be provided under any applicable law.

2. **Miscellaneous.**

2.1 **Waiver of Demand.** Obligor (i) waives presentment, notice of dishonor and protest of this Note; (ii) consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Payee with respect to the payment or other provisions of this Note; and (iii) agrees that makers, endorsers, guarantors, joint and several obligors, and sureties for the indebtedness evidenced hereby may be added or released without notice to Obligor and without affecting Obligor's liability hereunder. The liability of Obligor hereunder shall be absolute and unconditional.

2.2. **Notices.** Notices and communications under this Note shall be in writing and shall be given by (i) hand-delivery, (ii) confirmed telecopy, or (iii) reliable overnight commercial courier (charges prepaid) to the addresses given in this Note. Notices to Obligor shall be at its address given below, and notices to Payee shall be c/o Charles B. Brewer, Esq., 3010 LBJ Freeway, Suite 1200, Dallas, Texas 75234. Notice shall be deemed to have been given and received (a) if by hand delivery, upon delivery, (b) if by telecopy on the date of confirmation and (c) if by overnight courier, on the date scheduled for delivery. A party may change its address by giving written notice to the other party in such manner.

2.3. **Information.** Obligor will keep Payee generally informed as to developments concerning any Casino Project, proposed or actual, related legislation and the role and financial prospects of Obligor in connection therewith.

2.4. **Enforcement Costs and Expenses.** Obligor shall promptly pay (or reimburse, as Payee may elect) upon demand all costs and expenses which Payee may hereafter incur in connection with any enforcement of this Note including without limitation, the payment of all reasonable attorneys' fees in connection therewith and the collection of all amounts due under this Note.

2.5. **Payment Due on a Day Other than a Business Day.** If any payment due or action to be taken under this Note falls due or is required to be taken on a day that is not a business day, such payment or action shall be made or taken on the next succeeding business day and such extended time shall be included in the computation of interest.

2.6. **Governing Law.** This Note shall be construed in accordance with and governed by the substantive laws of the State of Rhode Island without reference to conflict of laws principles.

2.7. **Integration; Amendment.** This Note constitutes the sole agreement of the parties with respect to the subject matter hereof and supersedes all oral negotiations and prior writings with respect to the subject matter hereof. No amendment of this Note, and no waiver of any one or more of the provisions hereof, shall be effective unless set forth in writing and signed by Payee.

2.8. **Successors, Assigns, Tribal Entities.** This Note (i) shall be binding upon Obligor and its successors and permitted assigns; and (ii) shall inure to the benefit of Payee and its successors and assigns; provided, however, that, unless Payee consents in writing, Obligor may not assign its rights or obligations hereunder or any interest herein. and any such assignment or attempted assignment by Obligor, unless so consented. shall be void and of no effect with respect to Payee. Tribe will take all steps necessary to cause the Tribal Entities to provide Tribe with funds as may be necessary for Tribe to fulfill its obligations under this Note. Payee may from time to time sell or assign, in whole or in part, this Note and/or the obligations evidenced thereby.

2.9. **Severability and Consistency.** The illegality. unenforceability or inconsistency of any provision of this Note shall not in any way affect or impair the legality, enforceability or consistency of the remaining provisions of this Note.

2.10. **Limited Waiver of Sovereign Immunity; Consent to Jurisdiction.** Obligor acknowledges that its agreements and obligations relative hereto are of a commercial nature. and, in further consideration of the Release by Payee being delivered to Obligor concurrently herewith, for itself and all Tribal Entities, as applicable, hereby provides an express and irrevocable limited waiver of any applicable sovereign immunity and expressly consents to be sued should an action be commenced to determine and enforce the obligations of the parties under this Note or said Release by Obligor and any actions in conjunction therewith; provided

that this consent is not, and shall not be deemed to be, a consent by Obligor to the levy of any judgment, lien or attachment upon any property or income of Obligor other than on said revenues, dividends or other amounts payable to the Tribe or any Tribal Entity and arising from or in connection with any Casino Project. Obligor, for itself and all Tribal Entities, as applicable, expressly submits to and consents to the jurisdiction of the United States District Court of the District of Rhode Island or if not available, the State courts of the State of Rhode Island, or any other court of competent jurisdiction. and to the enforcement of any judgment or award thereof in any state or jurisdiction, whether within the State of Rhode Island or otherwise. Obligor expressly waives any claim or defense of exhaustion of Tribal administrative or judicial remedies, and further expressly covenants not to sue Payee or any subsidiary, parent, affiliate, successor or assign of Payee, present or future (altogether, the "Capital Entities") in any present or future Tribal court or Court of Indian Offenses or U.S.C. Court or Native American or tribal tribunal, jurisdiction or venue ("Tribal Tribunals"). Payee shall be entitled to recover all reasonable costs and attorney's fees incurred by it or any Capital Entity in any action instituted to enforce any of its or their rights under this Note or said Release. Obligor, for itself and all Tribal Entities, as applicable. hereby expressly waives any application of the exhaustion of tribal remedies that might otherwise require, as a matter of law or comity, that any dispute be heard first in any Tribal Tribunal. None of Payee or any Capital Entity consent to or shall be subject to process or suit or any jurisdiction in any Tribal Tribunal, but Capital and any Capital Entity may enforce any order or judgment in any Tribal Tribunal against any Tribal Entity or its assets, without itself being subject to jurisdiction therein for any purpose, the Tribe, for itself and all Tribal Entities, as applicable, consenting to jurisdiction in any Tribal Tribunal for such purposes. Obligor and each Tribal Entity irrevocably appoints the Chief Sachem and/or the First Councilman of Obligor, if available, or otherwise any of each and every governor, councilman, director and/or officer, as applicable, of Obligor, as its attorneys upon whom may be served, by regular or certified mail at the address set forth in this Note. any notice, process or pleading in any action or proceeding against it arising out of or in connection with this Note or said Release.

**2.11. Judicial Proceeding; Waivers.**

OBLIGOR, FOR ITSELF AND ALL TRIBAL ENTITIES, ACKNOWLEDGES AND AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY PAYEE OR ANY CAPITAL ENTITY OR ANY SUCCESSOR OR ASSIGN THEREOF, ON OR WITH RESPECT TO THIS NOTE OR THE DEALINGS OF THE PARTIES WITH RESPECT SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY.

**IN WITNESS WHEREOF**, intending to be legally bound hereby. Obligor has executed and delivered to Payee this Note, as of the day and year first above written.

**ATTEST/WITNESS:**

________________________

**THE NARRAGANSETT INDIAN TRIBE**

By:________________________
Name: Matthew Thomas
Title: Chief Sachem

Address: c/o Offices of H. Jefferson
Melish, Esq.
404 Main Street
Wakefield, Rhode Island 02879

# ALLONGE

CAPITAL DEVELOPMENT GAMING CORPORATION, a Rhode Island corporation, hereby sells, transfers and assigns unto CAPITAL GAMING INTERNATIONAL, INC., a New Jersey corporation, all its right, title and interest in and to the Promissory Note dated April 2, 2001 in the face principal amount of $10,000,000.00 from the Narragansett Indian Tribe, a federally recognized Indian Tribe.

Date: July 20, 2006

**CAPITAL DEVELOPMENT GAMING CORPORATION,**
**a Rhode Island corporation**

**By:** Charles B. Brewer
**Charles B. Brewer**
**Its President**

# ALLONGE

FOR VALUE RECEIVED, CAPITAL GAMING INTERNATIONAL, INC., a New Jersey corporation, hereby sells, transfers and assigns unto CGI-NIT, LLC, an Illinois limited liability company, all its right, title and interest in and to the Promissory Note dated April 2, 2001 in the face principal amount of $10,000,000.00 from the Narragansett Indian Tribe, a federally recognized Indian Tribe.

Date: July 20, 2006

**CAPITAL GAMING INTERNATIONAL INC.,**
**a New Jersey corporation**

**By:** Charles B. Brewer
**Charles B. Brewer**
**Its President**

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Department of Administration
Beverly E. Najarian
DIRECTOR
One Capitol Hill
Providence, RI 02908-5890

OFFICE (401) 222-2280
FAX (401) 222-6436
TDD (401) 222-1227

July 19, 2006

Chief Sachem Matthew Thomas
P.O. Box 268
Charlestown, Rhode Island 02813

Re: Disbursements Pursuant to R.I. Gen. Laws §42-61.2-7(a)(5)

Dear Chief Sachem Thomas:

R.I. Gen. Laws §42-61.2-7(a) (5) provides in relevant part for the Narragansett Indian Tribe to receive:

> "……five percent (5%) of net terminal income that is solely attributable to the introduction of newly authorized machines at Lincoln Park as determined by the revenue estimators at the Revenue Estimating Conferences pursuant to chapter 16 of title 35 up to a maximum of ten million dollars ($10,000,000) per year, which shall be paid to the Narragansett Indian Tribe for the account of a Tribal Development Fund to be used for the purpose of encouraging and promoting: home ownership and improvement: elderly housing; adult vocational training; health and social services; childcare; natural resource protection; and economic development consistent with state law……."

**The final calculation of the net terminal income for Fiscal Year 2006 attributable to the introduction of the newly authorized machines at Lincoln Park has been made. In order to comply with the state's obligations under R.I. Gen. Laws §42-61.2-7(a)(5), an amount ($392,547.) will be disbursed to the Narragansett Indian Tribe's Tribal Development Fund to be used for the purposes set forth in R.I. Gen. Laws §42-61.2-7(a)(5).**

Chief Sachem Matthew Thomas
July 19, 2006
Page 2............................

So that the State may comply with its obligations under R.I. Gen. Laws §42-61.2-7(a)(5), please provide me with an official copy of a Resolution of the Narragansett Indian Tribe establishing a Tribal Development Fund. I will also need sufficient account information to enable the State to wire funds into the Tribal Development Fund account. **Upon receipt of that information, the funds will be wired into the account.**

Sincerely,

Beverly E. Najarian
Acting Director Division of Lotteries