**C**

Briefs and Other Related Documents

Trump Hotels & Casino Resorts Development Co., LLC v. Eastern Pequot Indians of Connecticut, Inc.D.Conn.,2004.Only the Westlaw citation is currently available.

United States District Court,D. Connecticut.

TRUMP HOTELS & CASINO RESORTS DEVELOPMENT COMPANY, LLC, Plaintiff,

v.

David A. ROSKOW, et al., Defendants.

**No. 3:03CV1133 (RNC).**

March 31, 2004.

Al Hizqiyal Rabbi L. Hiramramzdeen, Uncasville, CT, pro se.

*RULING AND ORDER*

CHATIGNY, J.

***1** Trump Hotels & Casino Resorts Development Company, LLC (Trump), commenced this action in Superior Court against the Paucatuck Eastern Pequot Tribal Nation (Paucatucks) and others after the Paucatucks repudiated an agreement with Trump to develop a casino.[FN1] The complaint alleged a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. § 42-110a, *et seq.*, intentional interference with contractual relations, civil conspiracy, fraud and breach of contract. Defendant William I. Koch removed the case pursuant to 28 U.S.C. §§ 1331 and 1441 on the ground that Trump's claims are preempted by the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701, *et seq.* He was ordered to show cause why the case should not be remanded for lack of subject matter jurisdiction. Trump has moved for costs and fees pursuant to 28 U.S.C. § 1447(c) in the event that the case is remanded. For the reasons that follow, the case is remanded and Trump's motion is denied.

FN1. Also named as defendants are the Eastern Pequot Indians of Connecticut, Inc., Eastern tribal council members Mark R. Sebastian, Marcia Jones-Flowers, Lynne D. Powers, Ron Jackson, Joseph A. Perry, Jr., Katherine H. Sebastian, William O. Sebastian and Lewis E. Randall, Sr.; Paucatuck tribal council members James L. Williams, Sr., James A. Cunha, Jr., Frances M. Young, Agnes E. Cunha, Gina Hogan, Eugene R. Young, Jr., Christine C. Meisner, Brenda L. Geer and Raymond Geer. Others are David A. Roskow, William I. Koch, Eastern Capital Development, LLC, and Eastern Capital Funding, LLC (collectively referred to as non-tribal defendants).

*BACKGROUND*

For the purpose of determining subject matter jurisdiction, the following facts are assumed to be true.

In 1978, the Eastern Pequot Indians ("Easterns") applied for federal recognition as a tribe. In 1989, the Paucatucks also applied for federal recognition. In 1997, Trump, through one of its affiliates, entered into a contract with the Paucatucks with the twin goals of obtaining for the tribe both federal recognition and the right to operate a Class III tribal gaming facility in accordance with IGRA.[FN2]

FN2. In 1999, by agreement of the parties, Trump's affiliate assigned the rights and obligations under the contract to Trump. Amalgamated Industries, Inc., also is a party to the Trump contract. Amalgamated filed an independent action seeking to enforce rights it obtained under a related contract; that action also was removed from state court. For the reasons given here, that case also will be remanded.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Under the contract, Trump was to provide funding, in the form of an advance, and expertise. In exchange, the Paucatucks agreed to pursue with state officials the right to operate a gaming facility and to execute with Trump "definitive agreements" setting forth the parties' rights and obligations. The definitive agreements were to include a " development agreement" and "management agreement," which would provide Trump with a percentage of the gaming facility's net revenues as a management fee, for a term and in an amount no less than the maximum allowed under IGRA. (Removal Ex. A ¶ 5(e).) The Paucatucks further agreed that they would not enter into management or consulting agreements with any third party. (Removal Ex. A ¶ 8(4)).

On July 1, 2002, the Bureau of Indian Affairs published a Notice of Final Determination recognizing the "historical Eastern Pequot tribe, represented by two petitioners," the Paucatucks and the Easterns. Connecticut's Attorney General filed a petition for reconsideration. The petition remains pending.

In the wake of the BIA's decision, the non-tribal defendants induced Eastern tribal council members to join with Paucatuck tribal council members to form a joint tribal council. The reconstituted tribal council voted to reject Trump's contract and approved a resolution agreeing to execute a development contract with the non-tribal defendants enabling them to manage any future gaming facility.

*DISCUSSION*

*Subject Matter Jurisdiction*

*2 Koch has the burden of demonstrating that removal was proper. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 45 (2d Cir.2002). As a general rule, a defense that plaintiff's claims are preempted by federal law will not suffice to confer federal question jurisdiction, which must be determined by reference to the allegations that "appear on the face of a well-pleaded complaint." *Plumbing Indus. Bd. v. E.W. Howell Co.*, 126 F.3d 61, 66 (2d Cir.1997); *accord Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). An exception to that rule arises when a federal statute so completely preempts a particular field that any complaint raising claims in that area is deemed to be federal in nature. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

IGRA has been held to completely preempt the field of regulating Indian gaming when the statute applies. *See First Amer. Casino v. Eastern Pequot Nation*, 175 F.Supp.2d 205, 209 (D.Conn.2000) (citing *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir.), *cert. denied*, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999) ; *Gaming Corp. of Amer. v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir.1996)); *see also Tamiami Partners v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1046-47 (11th Cir.1995) (IGRA so dominates the field that it is incorporated into gaming contracts by operation of law).[FN3] However, IGRA's preemptive force is limited to claims that fall within its scope. *See Gaming Corp. of Amer.*, 88 F.3d at 548-49. It does not apply to all contract disputes between a tribe and a non-tribal entity, but only those pertaining to management contracts and collateral agreements to those contracts, as those terms are defined under the IGRA. *See* 25 U.S.C. § 2711; 25 C.F.R. §§ 502.5 and 502.15; *see also Casino Resource Corp. v. Harrah's Entm't, Inc.*, 243 F.3d 435, 439-40 (8th Cir.2001). Even then, the critical issue in the preemption analysis is whether resolution of the claim would interfere with tribal governance of gaming. *Id.* at 438 n. 2

FN3. A necessary predicate to falling within the preemptive scope of IGRA is that the claim pertain to a federally recognized tribe. *See Passamaquoddy Tribe v. Maine*, 75 F.3d 784, 792 n. 4 (1st Cir.1996); *First Amer. Casino*, 175 F.Supp.2d at 208. In the present case, the status of the Pequots, meaning the Paucatucks and Easterns collectively, as a federally recognized tribe, is at issue due to the petition for reconsideration of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

BIA's decision. Whether that petition renders the Pequots' status merely provisional and therefore denies it the protections of IGRA, apparently an issue of first impression, need not be decided because Trump's claims are not completely preempted by IGRA and do not even require construction of IGRA. *See Sungold Gaming (U.S.A.), Inc. v. United Nation of Chippewa, Ottawa,* No. 99-CV-181, 1999 WL 33237035, *2 n. 8 (W.D. Mich. June 7, 1999) (taking similar approach).

The Trump contract is not a management contract within the meaning of IGRA. It is an agreement to execute such a management contract in the future contingent on the Paucatucks gaining federal recognition. In other words, it is "precursory to the creation of a management contract." *Sungold Gaming (U.S.A.),* 1999 WL 33237035, *4. In addition, although the Trump contract does limit the tribe's authority in that it must contract with Trump to manage a gaming facility, (Removal Ex. A ¶ 5(e)), it places no other limits on the tribe's authority.[FN4] *See United States ex rel. Bernard v. Casino Magic Corp.,* 293 F.3d 419, 424-25 (8th Cir.2002); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts,* 249 F.Supp.2d 901, 907 (W.D.Mich.2003); *see also* 25 C.F.R. § 531.1(b) (setting forth functions that must be covered in management contracts).

FN4. For this reason, Trump's claim for specific performance does not provide a basis for subject matter jurisdiction. *See Sungold Gaming (U.S.A.), Inc.,* 1999 WL 33237035, at *4 (remanding case including action for specific performance); *but see Amer. Vantage Cos. v. Table Mountain Rancheria,* 103 Cal.App.4th 590, 126 Cal.Rptr.2d 849, 854 (Cal.App.Ct.2002), *cert. denied,* 540 U.S. 820, 124 S.Ct. 105, 157 L.Ed.2d 39 (2003) (reversing judgment dismissing case on preemption grounds, but noting that plaintiff only sought money damages and thus was not trying to undermine tribal defendant's decision to terminate relationship).

*3 Nor is the Trump contract a collateral agreement under IGRA. In the absence of a pre-existing management contract, there can be no collateral agreement.[FN5] *See Catskill Devel., L.L.C. v. Park Place Entm't, Corp.,* 217 F.Supp.2d 423, 432 (S.D.N.Y.2002), *vacated in part on other grounds,* 2003 WL 22358852 (S.D.N.Y. Oct.7, 2003).

FN5. Another factor that counsels against a conclusion that the Trump contract is a management contract or collateral agreement under IGRA is that, prior to executing the contract, the Pequots did not enact and submit for approval a tribal ordinance authorizing and regulating gambling. Under IGRA, such an ordinance is a necessary predicate to management contracts. *See* 25 U.S.C. §§ 2710 and 2711.

Trump's claims do not implicate the Pequots' authority to govern gaming. *Cf. Gaming Corp. of Amer.,* 88 F.3d at 549. Unlike tribal ordinances authorizing and prescribing procedures for gaming, which are mandated by IGRA and therefore within its preemptive scope, *see* 25 U.S.C. § 2 710(d)(1), the tribal council resolution at issue here authorizes negotiations with the non-tribal defendants to the exclusion of Trump.[FN6] (Removal, Ex. A, 4/15/2003 letter.)

FN6. Perhaps because of the absence of an antecedent tribal ordinance authorizing and regulating gaming, defendants do not contend that the council resolution to pursue gaming opportunities with the non-tribal defendants should be viewed as part of its management licensing process under IGRA. *See* 25 C.F.R. §§ 502.10 and 558.1. *Cf. Tamiami Partners,* 63 F.3d at 1046-47 (claim implicating fairness of licensing process preempted by IGRA).

Exercising jurisdiction in this case would not be justified by the federal policy underlying IGRA of protecting tribes from unscrupulous parties. *See Tamiami Partners,* 63 F.3d at 1032-33. Any management contract arising from this kind of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

precursory agreement must satisfy IGRA's requirements.

Koch's alternative argument that jurisdiction exists because the court must construe IGRA to resolve Trump's claims is unfounded. IGRA's requirements do not apply to the Trump contract. Moreover, the fact that Trump's damages may be determined by consulting IGRA's provisions on management fees has no bearing on defendants' liability. Accordingly, federal jurisdiction is lacking.

*Motion for Costs and Fees*

A district court has broad discretion under 28 U.S.C. § 1447(c) to award fees and costs when a removed case is remanded to state court. *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992). An award of attorney's fees need not be based on a finding of bad faith, but the purpose of a fee award is deter improper removal. *See Circle Indus. USA v. Parke Const. Group,* 183 F.3d 105, 109 (2d Cir.1999), *cert. denied,* 523 U.S. 1062 (1999). Defendants had a plausible basis for removing this case. Accordingly, an award of fees would not be justified.

*CONCLUSION*

The action is hereby remanded to the Superior Court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction and Trump's motion for costs and fees [Doc. # 22] is denied.

So ordered.

D.Conn.,2004.
Trump Hotels & Casino Resorts Development Co., LLC v. Eastern Pequot Indians of Connecticut, Inc.
Not Reported in F.Supp.2d, 2004 WL 717131 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3956920 (Trial Motion, Memorandum and Affidavit) Defendant William I. Koch's Opposition to Plaintiff's Motion for Relief from Stay of Discovery (Jan. 20, 2004) Original Image of this Document (PDF)
• 2004 WL 3956919 (Trial Motion, Memorandum and Affidavit) Objection to Plaintiff's Motion for Relief from Stay of Discovery (Jan. 15, 2004) Original Image of this Document (PDF)
• 3:03cv01133 (Docket) (Jun. 27, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.